is submitted. Matias v. Garland has previously been submitted. And we'll take up Priddis. No, I'm sorry, not Priddis. Oh, yes, Enri Priddis. Sony Music v. Priddis. Good morning, Your Honors. Welcome to Phoenix. Thank you. Thank you. For being here. And thank you for giving us oral argument in this case, which, as far as we know, has never been addressed at the circuit court level. So we appreciate the opportunity to argue this for you. My name is Jim Ball. I represent 14 music publishers that in 2016 had believed that Mr. Priddis was infringing copyright claims by operation of his karaoke business. At that time, they clearly had separate claims. Each of the publishing houses owned separate interests, separate songs, separate copyrights. There may have been some overlap because there are times when a copyright interest is divided up. For example, if there are two songwriters that work for different publishing houses, a copyright interest can be divided. So at that time, they could have filed, each of them could have filed a separate lawsuit. At that time, they could have joined together and filed an involuntary bankruptcy petition. And in 2016, I don't think there would have been any argument whatsoever that they met the numerosity requirement under Section 303 of the Bankruptcy Code, which requires that there be three separate claimants holding individual claims in order to bring the petition. But that was then and this is now. Correct. Is a single judgment in favor of 14 creditors one claim or 14 claims? That's the issue we're asking you to decide, Your Honor. And we submit that it is, they retain their separateness, that they're separate claims. The claims merge into the judgment, meaning that you cannot bring an action on those separate claims other than through the judgment, but they do not merge into each other. And we think... They merge, but they don't merge. They merge into the judgment, so we no longer can file a suit based on the claim. You have to operate based on the judgment. But for the purpose of counting the numerosity purposes, they retain their separateness. The components of the judgment are separate claims added together equal this $3 million judgment. And we think that is required by the Supreme Court's decision in Boynton v. Ball, which is an old case under a prior version of the Bankruptcy Code. It's an 1878 case where the court said that even though a claim has become a judgment, it still retains the character of what it was before the judgment was entered. But Boynton involved a single creditor and a judgment amount that was identical to the previously unliquidated debt. That's not what we have here. So why does Boynton control? Boynton controls... Boynton is the underlying predicate for the proposition that a claim does not lose its character by being reduced to a judgment. And yes, you're right. In that case, there was one creditor. In this case, there are 14 creditors with one judgment. And that's why... There are really 21 creditors with one judgment, but seven did not join. That's correct. You have read the briefs very closely. That's very true, which is why the involuntary bankruptcy position isn't for $3 million. It was for $2,900,000 and some change because of those seven. A dollar amount that's not anywhere in writing. The division in the apportionment is something that I don't find in a written record, correct? Well, Your Honor, the question is whether or not that claim is easily divisible by looking at the record. And that's where we leave Boynton and move into the bankruptcy court cases, the district court cases that have considered this issue. We think this case should be looked at like the Turner case and the Mid-America case. Mr. Pritish thinks this should be looked at like the Hoostie case. The important thing about Boynton and Mid-America are those are cases where there were three creditors who separately were reduced to a single judgment. The judgment did not specify in those cases what percentage each of the different claimants were attributed to each of the different claims. But the court found that those judgments were easily divisible by looking behind the judgment as they felt they were allowed to do under Boynton. And in Mid-America, for example, there were attachments to exhibits to the complaint that showed which of the separate creditors owned which amount of the judgment. That's the same situation that we have here. Can you reconcile the Hoostie case and the decision from the Michigan bankruptcy court or is it, in your view, just wrong? In our view, it's just wrong. We don't believe it's well coded, which we do not believe are apt. They simply seem to be the two lines of cases simply seem to be passing by each other with the exception that the Hoostie case does also cite Turner, one of the cases we rely on, for the proposition that if the judgment is easily divisible, it should be considered to be separate creditors and with separate claims. So that's why I think the bankruptcy judge had difficulty with this case. They couldn't, for example, if they wanted to buy out Sony by itself out of the bankruptcy, they couldn't do that, right? Because all the creditors have some sort of side deal of proportioning any return. Is that right? That's an issue that the bankruptcy court struggled with. I don't think it's necessarily the, so that's a collectability issue rather than a divisibility issue. And I don't think for the purposes of numerosity, I think divisibility is the important thing. But like, so if we wanted to buy out Sony by itself and leave the other creditors in bankruptcy, how could the state do that? They could make an offer to Sony to buy out its interest or settle with Sony for its interest in the judgment, which is, I think, $1,300,000, something of that nature, and get a release from Sony and the partial satisfaction of that judgment from Sony. And then that would just leave the remainder of the claimants with the remainder of the judgment. Now, would the bankruptcy court have to go to the other creditors and say that this is appropriate given that the judgment is a collective judgment? In the context of the bankruptcy court, the court wouldn't go to the creditors. If, for example, this was a voluntary bankruptcy that Mr. Pritis had filed, each of these creditors would have filed separate proofs of claim. And the bankruptcy trustee would have distributed any funds that he collected based on the separate proofs of claims filed by each of the creditors. So the bankruptcy trustee would not settle with an individual creditor. He's required to distribute pro rata for the creditors. And that's how it would have been addressed in the bankruptcy context. Is there something distinct about copyright law and statutory damages that makes the claims more readily divisible? Is there something unique to copyright law that would take this out of the ordinary run of the mill cases? Yes. So many of the cases that are cited, especially by the other side, which we would define as ordinary run of the mill cases are promissory note cases. We think what distinguishes this case and what makes it easily divisible is the fact that my clients elected in the initial proceeding to have a court award statutory damages and between $750 and $150,000 per violation. And then once the court determines the amount for a single violation, it just gets distributed, multiplied by the number of claims that each of the entities have, which is what the math is done for the court in the briefs. What is the relationship between the full amount of statutory damages owed each creditor and the $3 million judgment? Well, we never got to a judgment where a court decided what an individual claim would be. We had the first proceeding, which ended with a settlement agreement where Mr. Pritis was supposed to pay $400,000 over time. That settlement agreement specifically said if there's a breach, a new case could be filed for intentional copyright infringement. But it also said that the damages in that case would be agreed to be $3 million. So you have to do the math with that $3 million, compare that $3 million to the number of copyright claims and break it down to the $12,900 per copyright infringement claim that we say is applicable, and which would be applicable if this had gone to a judgment on trial and the court had entered a number. This number of $12,000 is somewhere between the $750,000 and the $150,000. $750,000 and $150,000. So it's not a difficult problem to divide it. The parties agreed, the parties, my clients agreed to maintain the idea that if there was an election, each copyright would have a certain number assigned to it, each violation, and it would just be multiplied. And that's what the parties continued to do. And that simplifies the copyright case other than trying to prove the actual amount of damages for each infringement to move to the statutory. So we believe that under Boynton, the separateness of each of the claims remains even after the judgment is entered. And that these 13 claims, or 14 claims, are 14 separate claims despite the fact that there is one judgment. And that to rule otherwise, Your Honor, this case was filed as one complaint with several plaintiffs in the interest of having 13 separate and 14 separate cases filed. One case was filed. That's allowable, that's common practice under copyright law in these types of cases. It's allowable under the rules of civil procedure. And that should, going through that process, should not change the fact that these are separate claims and should be counted as separate for numerosity purposes under Section 3. If I have any time remaining, I will reschedule. All right. Thank you. You don't, but we'll just take the other side. Good morning. May it please the Court, I'm Daitran Liz Nguyen, and I represent Richard Curtis. The issue in this case is simple. It is whether the agreed judgment should be looked at as one or multiple rights of payment, or one, I apologize, one or multiple claims. And claims is defined under 11 U.S.C. 101 as right to payment. Your opponent argues that really $3 million judgment is easily divisible. He went through some of those gaps. Do you agree that it's easily divisible? Because if it is, he wins, right? I do not agree that it's easily divisible because there's the divisibility of that judgment is a separate agreement that the appellants have amongst themselves. It's a proration. So if you look at it, no one appellant can collect on the entire judgment without having to share with the other appellants. Therefore, there's only one right to payment. Doesn't each person's right to payment constitute a claim under the Section 101 5 defining the term claim? It says a right to payment whether or not such right is reduced to judgment. So aren't there 13 claims even though it's still reduced to a judgment? No, Your Honor, because it's one agreed judgment for $3 million. They don't all each have a right to $3 million. But they have a right to a portion of $3 million. Yes, and that's the agreement amongst themselves. But the debtor, or Mr. Pritis, when he pays that, he's paying it to all of them. So it's one right to payment. He has one piece of paper that says, I owe $3 million. And if I pay the $3 million, it's going to go to them, and it's one payment. I don't see the definition of the term claim discussing pieces of paper. I see it saying a right to payment whether or not such right is reduced to judgment. Well, if you look at the Hootsie case, the Hootsie court looked at a similar issue where it was a judgment that was based on a settlement agreement. And there were three judgment creditors on that judgment. And the court said, because if you look, using the look behind approach, the court looks behind that judgment and found that it was based on a settlement agreement for a sum certain. And where that's different from the Turner case that the appellants are arguing should apply is in Turner, the judgment was based on default. So that means that when you look behind, the claims retained their original amounts because it was entered in default. So claimant A, B, and C each retained their full amount of, say it was $20,000. They each had $20,000. In this case, that's like Hootsie, they settled their claims for $400,000 with no division between the parties, the judgment creditors. It was a sum certain for $400,000. And that's what Pritis owed. So that was their one right to payment. The agreed judgment only came into effect, it was a condition that if there was a default on the settlement agreement, then the appellants would be able to file the second lawsuit and have the agreed judgment entered for an amount of $3 million, a sum certain that was not divided up, that was based on the $400,000. The $400,000 and the $3 million do not have any relation to the underlying infringement claims that they brought in either lawsuit, the first one or the second one. But counsel, when they filed the petition for involuntary bankruptcy, didn't they list the individual amounts owed to each creditor? Yes, they did. And are you challenging those amounts? Yes, we are. Why? Under what basis can you challenge those amounts? Because those amounts bear no relation to the underlying claims that they would have had if they would have- You don't contest that you owe them $3 million, correct? We don't contest that we owe them $3 million. But you're contesting how they decide to divvy up the $3 million? What's your standing and basis for that? We're contesting whether they have one right to payment or multiple rights to payment, because that changes whether they have one claim or multiple claims. To put my client into an involuntary bankruptcy, they would have to show that they have more than one claim. Under 303B, it says that three or more creditors are allowed to put your client into bankruptcy if the amount of liability is not contingent or there's no bonafide dispute as to liability or amount, right? That's correct. So there's no bonafide dispute as to liability, you agree? Yes, Your Honor. And I don't see how there could be a bonafide dispute as to amount. There isn't a dispute to the amount. The dispute is whether that amount is one claim, one right to payment, or if that's multiple rights to payment. But under 303B, I don't think that's relevant. It just says if there's three or more holders of a claim where there's no subject, that that's not subject to a bonafide dispute as to liability or amount. The dispute, Your Honor, is, yeah, there are 14 of them on this one agreed judgment. The dispute is, is this agreed judgment multiple claims under 303 and under 101? Or is it just one claim under 303 and 101? Let me put it this way. If your client were solvent, would it be without subject to liability to pay the entire $3 million to Sony, ignoring the other three holders of the claims to that $3 million judgment? If my client were solvent and could pay the $3 million today, and say he chose Appellant 14 to pay the $3 million to, that still has to be prorated to all of the other, that Appellant 14 would have an issue, a contribution issue with all of the other 13 because. Because they all have a right to a portion of that $3 million. That's why, right? Under their agreed judgment for the $3 million and their proration agreement, they're agreeing to prorate the amount of the $3 million. But my client only has to pay one time the $3 million. Right, but there's several people who have a right to payment of some portion of that $3 million. Yes, they're on their agreed judgment, but the divisibility of that judgment isn't readily apparent. In fact, you're admitting that $3 million is an ode to any one of those people that are in the agreed judgment. They settled their claims for lesser than what they'd otherwise be entitled to. But they all have a right to payment from that $3 million. Right, they have one right to payment under that $3 million is our argument. And let me try this question. This math begins to hurt my head. Is a prorated share of an agreed judgment a single claim or separate claim? And explain why. That's what we have here, right? A prorated share of a single judgment. Is that a single claim or is it multiple claims? Our position is that it's one single claim. It's one piece of the pie. Whatever they agree to do with it after the fact to prorate amongst themselves doesn't change the fact that it's just one right to payment. There is one sum certain that's owed. It's $3 million. And however that gets divvied up because of their agreement is after the fact of when the judgment debtor has to pay. So our position is that the proration doesn't change the fact that it's only one right to payment. In this case, it's not even a $3 million claim. It's a $2.9 million some dollar claim. That sum certain isn't so certain because seven of the 21 are not part of this. But I get your answer. Thank you. So there's one obligation to pay the claim. But there's several people who hold a right to payment. Like your client has one obligation to pay the amount of the judgment. But there are several people who have a right to payment from the judgment. You can't say that's not correct. How you're... Yes, there's one claim and... There's one obligation to pay. There's one obligation to pay. Yes. How they divvy it up is after the fact. But the definition of claim is a right to payment. And our position is that this agreed judgment only gives them one right to payment. But can you challenge how they divvy it up? Can you challenge their proration? No, that wouldn't be up to us how we challenge it. Therefore, it seems like there's no dispute as to the amount owed to each claimant. Well, we wouldn't know what is owed to them because we don't know what their proration is. So the difference between... Filing. And the Turner line of cases is that if you look behind the judgment in the Turner cases, there were default amounts. So you can easily determine what the amounts were. If you look behind this agreed judgment, you can't determine what the original claims would be because they were never liquidated. Why can't we just look at the petition for involuntary bankruptcy? I'm sorry. Why can't we just look at the petition for involuntary bankruptcy, where they listed different amounts owed? Because if you use the look behind, those numbers were never in the original lawsuit. Those numbers were backed into. Those numbers were, they were set forth claim by claim in the verified second amended complaint for injunction and damages against Pritis. You can trace each of those numbers to the claims by each of the parties who agreed to the judgment by looking at that. You just look at each separate claim and you do the math. It was never presented to us that the math was never given that. All of this is about whether or not these creditors get to file a petition for involuntary bankruptcy, right? Right. Yes. So it doesn't affect any other aspect of rights against your client. No, it does. It's the means of collecting a judgment. Yes, your honor. Okay. Thank you. I'll give you a minute since we went over quite a bit. Unless the court has questions, I have nothing. I have a question for you, given the discussion, if I may. We have a joint judgment. We have related claims. There's a lot we can agree on. Can each creditor enforce its individual rights? Each creditor can attempt to collect on the judgment, but they cannot, under copyright law, collect more than their share. And if, for some reason, they ended up with more than their share, they would hold it in trust for the other claimants they would have. Forever? Well, forever is a long question. Long time. Yes. That's like me doing math. I cannot say if it would be forever. But yes, they would owe it to the other creditors if they collected more than their share. All right. Thank you, counsel. Sonny Musick v. Pritis will be submitted.
judges: WARDLAW, BUMATAY, Zouhary